25-2863
*SEC v. Dunn*

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand twenty-six.

Present:

DEBRA ANN LIVINGSTON,
SUSAN L. CARNEY,
MICHAEL H. PARK,
*Circuit Judges.*

---

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee*,

v. 25-2863

JILL A. DUNN,

*Appellant.**

---

FOR PLAINTIFF-APPELLEE: MORGAN BRADYLYONS (J. Russell McGranahan, Jeffrey R. Johnson, Jeffrey A. Berger, *on the brief*), U.S. Securities & Exchange Commission, Washington, DC.

FOR APPELLANT: BENJAMIN ZELERMYER, Dorf Nelson & Zauderer LLP, Rye, NY.

---

* The Clerk of Court is respectfully directed to amend the caption accordingly.

Appeal from a judgment of the United States District Court for the Northern District of New York (Homer, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

The Securities and Exchange Commission brought a civil enforcement action against David Smith and sought an asset freeze covering a trust established by Smith and his wife (the "Trust"). During the asset-freeze proceedings, the Trust's attorney, Jill Dunn, submitted a declaration misstating when she learned of an annuity agreement that was critical to the litigation over the Trust's assets. The Northern District of New York sanctioned Dunn for knowingly submitting a false declaration. Dunn argues that the district court clearly erred in finding her statements knowingly false and made in bad faith and that she was denied due process in the sanctions proceedings. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

**I. Falsity and Bad-Faith Findings**

"We review the imposition of sanctions for abuse of discretion." *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 280 (2d Cir. 2021). But "because sanctions proceedings . . . plac[e] the district judge in the role of accuser, fact finder and sentencing judge all in one, our review is more exacting than under the ordinary abuse-of-discretion standard." *Id.* (cleaned up).

"An abuse of discretion occurs when a district court *bases* its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 53 (2d Cir. 2018) (emphasis added). But "[w]hen a lower court sanctions a litigant for bad faith, the court must outline its factual findings with a high degree of specificity." *Id.*

(internal quotation marks omitted). Even so, "more often than not, the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." *Id.* (internal quotation marks omitted).

Dunn argues that the district court abused its discretion by improperly applying an objective reasonableness standard and relying on a clearly erroneous finding that she received the entire Annuity Agreement on July 21, 2010.

A. Objective Reasonableness Standard

When a court imposes "sanctions *sua sponte* without affording the offender the opportunity to withdraw the challenged document," it must make "a finding of subjective bad faith." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013). In *Muhammad*, for example, we reversed sanctions because the district court improperly "appl[ied] an objective reasonableness test," "couch[ing] its conclusion in terms of what 'any competent attorney' would have done." *Id.* at 109.

Dunn argues that the district court did the same here: it rejected her claim that she did not review Wojeski's July 21 email until after July 27, reasoning that "it is the rare, and probably less employed lawyer, who does not immediately receive and respond to clients' electronic communications." *S.E.C. v. Smith*, 798 F. Supp. 2d 412, 429 (N.D.N.Y. 2011). But that reasoning made up only a small portion of the court's extensive analysis supporting its finding that Dunn's statements were knowingly false and made in bad faith.

For example, the court also found implausible Dunn's claim that even if she did read Wojeski's email, "she took no notice of the significance of the attached Annuity Agreement" because the agreement "self-evidently constituted the proverbial 'smoking gun'" on the primary

issue underlying the Trust's involvement in the case. *Id.* The court further reasoned that "the timing" of Wojeski's email discredited Dunn's claim: "Dunn made her first ever reference to a 'private annuity agreement'" in a call with the SEC only one day after receiving Wojeski's email. *Id.* Finally, the court reasoned that Dunn had a "strong motive to deny learning of the Annuity Agreement on July 21" because that denial was critical to the Trust's opposition to the reconsideration of the asset freeze, and Dunn's legal fees were being paid from Trust assets. *Id.* at 429–30. For all those reasons, the court concluded that the SEC had met its "burden of demonstrating subjective bad faith." *Id.* at 430.

Because the district court did not base its bad-faith finding solely on what a reasonable attorney would have done, but undertook an extensive analysis considering substantial evidence relevant to Dunn's knowledge, credibility, and motive, we reject Dunn's argument that the court applied the wrong standard.

B. Clearly Erroneous Finding

Dunn correctly notes that the district court erred in stating that she received the entire Annuity Agreement on July 21, 2010.[1] Dunn also correctly notes that the critical issue in the litigation regarding the freeze of the Trust's assets was whether Smith retained an ongoing interest in the Trust. And everyone agrees that the "Annuity Agreement constituted conclusive evidence" of that fact. *Id.* at 418. It "self-evidently constituted the proverbial 'smoking gun' on this issue." *Id.* at 429. What mattered for purposes of sanctions was whether Dunn knowingly

[1] *See, e.g., Smith*, 798 F. Supp. 2d at 428 (inserting "Annuity Agreement" in brackets in place of "documents attached . . . as Exhibit A" when quoting Dunn's declaration); *id.* at 429 ("Dunn had in fact received a copy of the Annuity Agreement . . . ."); *id.* ("Dunn could not have read the Annuity Agreement and failed to note its significance to her client.").

misrepresented when she learned of an annuity agreement establishing Smith's ongoing interest in the Trust. The district court's opinion makes clear that this was the focus of its inquiry.[2]

So the question is whether the documents Dunn actually received on July 21 were sufficient to put her on notice that such an annuity agreement existed. They were. Wojeski's email to Dunn listed "Attachments: Pvt Annuity.pdf." App'x at 319. Those attachments included a delivery receipt for a "Private Annuity Contract," identifying "David L. & Lynn A. Smith" as annuitants and bearing Mr. Smith's signature. More importantly, the attachments included the first page of the Annuity Agreement, titled "Private Annuity Contract Between David L. Smith & Lynn A. Smith, as Transferors and the David L. & Lynn A. Smith Irrevocable Trust . . . , Transferee." *Id.* at 322. That page also set out the key "Contract Terms" of the Annuity Agreement, including the effective date, first payment date, term, face amount, periodic payment, and annuity interest rate. *Id.*

It is thus understandable that the district court described Dunn as having received "the Annuity Agreement." Further, the district court's error in this regard is not material. She had in fact received the first page of that agreement, including a summary of its key terms. The Wojeski email and attachments revealed both the existence of the Annuity Agreement and Smith's continuing interest in the Trust through annuity payments. Because the sanctions ruling turned on Dunn's knowledge of the Annuity Agreement's existence and significance—not her receipt of the complete agreement—we cannot say that the court "*base*[*d*] its ruling" on the mistaken belief

---

[2] *See, e.g.*, *id.* at 439 ("The record here thus demonstrates by clear and convincing evidence that Dunn's false statement in her declaration . . . that she did not *learn* of the Annuity Agreement until it was provided to her on July 27, 2010 . . . was knowingly false." (emphasis added)); *id.* at 441 ("[T]he conduct of Dunn and Wojeski after July 20 and 21, 2010 when they received *notice of the existence* of the Annuity Agreement is sanctionable." (emphasis added)).

that Dunn had received the entire agreement on July 21. *Huebner*, 897 F.3d at 53 (emphasis added).

Separately, Dunn does not challenge the district court's remaining findings supporting its ultimate conclusion that she knowingly made false statements in bad faith. Nor could she. She stated in her September declaration, "I did not know of the *existence* of the private annuity agreement" on July 21, and "[n]either I nor Mr. Wojeski had *any documents* in our possession relating to the private annuity" on July 21. App'x at 266 (emphasis added). The July 21 email and attachments directly contradicted both assertions. And, as discussed, the district court also relied on Dunn's testimony and credibility, the temporal proximity of Wojeski's email relative to Dunn's reference to a private annuity agreement the next day, and Dunn's motive to deny learning of the agreement. *See Smith,* 798 F. Supp. 2d at 429–30.

Given those findings, and the district court's detailed explanation for them, Dunn has not shown that the court clearly erred in finding that her statements were knowingly false and made in bad faith.

## II. Due Process

"Due process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (cleaned up). Dunn argues that she received neither.

### A. Notice

"At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *Id.* In *Mackler Products, Inc. v. Cohen*, we thus found

insufficient notice when an attorney was warned about one category of his client's false testimony but sanctioned for failing to remedy an additional category not previously identified by the district court or the sanctions motion. *See* 225 F.3d 136, 144–45 (2d Cir. 2000).

Here, Dunn received sufficient notice that she might be sanctioned for misrepresenting her knowledge of the *existence* of the Annuity Agreement. The SEC's motion specifically sought sanctions based on Dunn's "false declaration[]" and "false statements about the Trust and the Annuity," App'x at 454, including her statement that "I did not know of the existence of a private annuity agreement until I received it . . . on July 27," *id.* at 451 (quoting Dunn Sept. Decl.). Unlike in *Mackler*, the court did not add a new category of sanctionable conduct; it sanctioned her for the same false statements identified in the SEC's motion.[3]

Dunn argues that she did not receive "*particularized* notice that consideration of sanctions would turn on whether Dunn received the Annuity Agreement by email . . . on July 21." Reply Br. at 10. Dunn is correct that neither the court's order granting leave to seek sanctions nor the SEC's motion focused on her receipt of the complete Annuity Agreement. But as discussed, the sanctions order did not turn on whether Dunn received the entire Annuity Agreement on July 21. It turned on whether she received enough information to make her aware of the agreement's existence and Smith's continuing interest in the Trust. And that is exactly the issue on which the SEC's motion gave Dunn notice.

---

[3] Dunn also received sufficient notice from the district court's November decision on the SEC's motion to reconsider. In that decision, the district court discussed at length the SEC's discovery of the Annuity Agreement and why Dunn's assertions that she did not become aware of the agreement until after July 27 lacked credibility. *See S.E.C. v. Wojeski*, 752 F. Supp. 2d 220, 226–28 (N.D.N.Y. 2010). Dunn's statements about when she learned of the Annuity Agreement were central to the dispute. So the court's order permitting the SEC to seek sanctions "for the conduct described herein" undoubtedly encompassed Dunn's making those statements. *Id.* at 233.

B. Opportunity To Be Heard

"[A] motion for sanctions does not automatically require an evidentiary hearing at all." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir. 2023). A hearing is particularly unnecessary "when there is no disputed question of fact or when sanctions are based entirely on an established record." *Schlaifer Nance & Co.*, 194 F.3d at 335. And "although granting a hearing for oral argument would generally be the better practice," "the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard." *Id.* at 335–36.

Here, the district court already had an established record. On the SEC's motion to reconsider the preliminary injunction, the court held an evidentiary hearing and heard Dunn testify about the Wojeski email and her July 22 call with the SEC—factual issues central to the later sanctions determination. A second evidentiary hearing was thus unnecessary.[4] Because the court had an established record and allowed full briefing on the sanctions motion, Dunn had a sufficient opportunity to be heard.

Dunn again argues that "the fact critical to consideration of sanctions was whether [she] received the Annuity Agreement itself," and that this "'fact' *was* plainly disputed, and was *not* the subject of the [previous evidentiary] hearing." Reply Br. at 12. But again, the sanctions order did not turn on Dunn's receipt of the Annuity Agreement itself. It turned on her knowledge of the agreement's existence. And the district court had already heard testimony on that issue, and the parties fully addressed it in their sanctions briefing.

[4] Moreover, Dunn concedes that she never requested a hearing on the sanctions motion.

* * *

We have considered Dunn's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

